# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Geospan Corporation,

        Plaintiff,

      v.

Pictometry International Corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 08-816 ADM/JSM

_____

David T. Schultz, Esq., Michael C. McCarthy, Esq., and Keiko L. Sugisaka, Esq., Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN, on behalf of Plaintiff and Maslon, Edelman, Borman & Brand, LLP.

Michael M. Lafeber, Esq. and Richard G. Mark, Esq., Briggs and Morgan, P.A., Minneapolis, MN on behalf of Fulbright & Jaworski L.L.P.

Chaz De La Garza, Esq., Law Offices of Chaz De La Garza LLC, Minneapolis, MN, on behalf of Chaz De La Garza & Associates LLC (now Law Offices of Chaz De La Garza LLC).

Joseph P. Titterington, Esq. and D. Ward Hobson, Esq., Dunlap Codding, PC, Oklahoma City, OK, and Rachel K. Zimmerman, Esq., Merchant & Gould, PC, Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Pictometry International Corporation's ("Pictometry") Motion for Attorney Fees [Docket No. 267].  At various times, Plaintiff Geospan Corporation ("Geospan") was represented by Maslon, Edelman, Borman & Brand, LLP ("Maslon"), Fulbright & Jaworski L.L.P. ("Fulbright"), and Chaz De La Garza & Associates LLC (now Law Offices of Chaz De La Garza LLC) (the "De La Garza Firm") in this action.  Maslon, Fulbright, and the De La Garza Firm all oppose the motion.  For the reasons set forth below, the motion is denied.

## II.  BACKGROUND

This case concerns technology in the field of "terrestrial photogrammetry"–the practice of determining the geographic properties of objects through photographic images.  On March 20, 2008, Geospan, then represented by the De La Garza Firm and Fulbright, filed a Complaint [Docket No. 1] alleging that Pictometry infringed U.S. Patent No. 5,633,946 (the "'946 patent") owned by Geospan.  Geospan also sought declaratory judgment of noninfringement and invalidity of U.S. Patent No. 5,247,356 (the "'356 patent"), owned by Pictometry.  By Order dated August 7, 2008 [Docket No. 32], the Court dismissed the declaratory judgment claims, leaving only the '946 patent at issue.  On May 11, 2009, Pictometry filed its First Amended Answer [Docket No. 73], which included counterclaims against Geospan for declaratory judgment of noninfringement and invalidity of the '946 patent.

Geospan's initial theory of infringement focused only on claim 16 of the '946 patent. See May 29, 2009 Greene Decl. [Docket No. 82] Ex. 1 at 2.  Claim 16 relates to "a method for collection of visual and spatial position from a moving platform."  Compl. [Docket No. 1], Ex. A ("'946 patent") col.20 ll.12-13.  Claim 16 recites eight steps for collecting video images from cameras positioned on a "moving platform" and associating data with those images.  '946 patent col.20 ll.14-51.  The eighth step of Claim 16 is "determining location of an object shown in at least two of the recorded non-coplanar images obtained from different ones of the first, second, third, and fourth video cameras."  '946 patent col.20 ll.48-51.

On May 29, 2009, Geospan deposed Pictometry's Chief Technical Officer Stephen Schultz ("Schultz").  At the deposition, a line of questioning was pursued related to Pictometry's "tie-pointing" process.  A cursory explanation of Pictometry's photogrammetry process assists in

understanding "tie-pointing."  Pictometry flies airplanes with video cameras that record images.
Nov. 12, 2009 Schultz Decl. [Docket No. 189] ¶ 9.  Those cameras are equipped with an "inertial
measurement unit" that records the orientation of the camera.  Id. ¶ 12. Further, the cameras are
equipped with GPS to record their position.  Id.  Pictometry also calculates the distance from the
camera to the ground using a mathematical representation of the ground it surveys.  Id.  With the
distance to the ground known, the internal geometry of the camera known, and the position of
the camera known, Pictometry can then determine the location of an object in a single image
through a mathematical process known as "single ray projection."  Id. ¶ 11. Pictometry's
surveying process generates thousands of images that are grouped into "sorties" that relate to a
particular geographic area.  Id. ¶ 19.  Due to overlap, objects appear in multiple images from
different vantage points in each "sortie."  See id. ¶ 22.  Theoretically, then, "single ray
projection" would yield the same location coordinates, i.e. latitude, longitude, elevation, for the
same object no matter which image was used.  Id. ¶ 24.  In practice, sources of error cause
differences in the determined location of an object across images.  Id.  For example, the
coordinates of an object as determined from one image may be to the north, south, east, or west
of that object as it is shown in a different image.  "Tie-pointing," then, is the comparison of the
location of an object within an image with the coordinates of that object generated by other
images.  "Tie-pointing" is conducted on a handful of images in a "sortie," and if error rates are
beyond a given threshold, the entire sortie is thrown out to be reprocessed or recaptured.  Id. ¶
26-27.

      After learning through deposition that the "tie-pointing" process makes use of multiple
images (albeit not to determine location), Geospan, still represented by the De La Garza Firm

and Fulbright, made a Motion to Amend/Correct Plaintiff's Claim Chart [Docket No. 79] to

allege infringement of claims 1, 3, 4, and 7 of the '946 patent.  Claims 3, 4, and 7 are dependent

claims of claim 1.  Like claim 16, claim 1 relates to a "method for collection of visual and spatial

position from a moving platform."  '946 patent col.18 ll.33-34.  Unlike claim 16, claim 1 has

five steps, the fifth of which is "determining location of an object shown in at least two of the

recorded non-coplanar video images obtained at different times based upon a location of the

object in each of those recorded images and the associated spatial positions and orientations of

the video cameras which produced those video images."  '946 patent col.18 ll.49-54.

On September 14, 2009, the De La Garza Firm and Fulbright moved to withdraw as

counsel for Geospan. [Docket No. 101].  Geospan then retained Maslon as counsel and Maslon

filed a Notice of Appearance/Substitution [Docket No. 130] on November 11, 2009.

The litigation then proceeded to claim construction.  A claim construction Order dated

July 22, 2010 [Docket No. 166] then issued, and was amended on August 4, 2010 [Docket No.

169].  At the claim construction hearing, the parties argued only over the definitions of the terms

"moving platform" and "video camera," and thus, the Order only construed those terms.

However, at the summary judgment stage, the term "determining location" became an issue of

contention between the parties.  Geospan argued that claim 1 was infringed because: (1) the

claim's proper construction required only that an object be shown in two images and Pictometry

would infringe under that construction, and (2) even under Pictometry's construction requiring

the location of an object be determined using two images, the "tie-pointing" process infringed.

Geospan's arguments relating to claim 16 mirrored those relating to claim 1, and Geospan

further urged a construction of "determining location" for claim 16 that did not require use of

two images based on the doctrine of claim differentiation and claim 16's lack of the phrase "based upon." Pictometry urged the Court to find the patent invalid, asserting that claim 1 was anticipated or made obvious by prior art and that claim 16 was anticipated, obvious, lacked enablement, and advanced several equitable defenses to infringement.

An Order dated March 31, 2011 [Docket No. 242] granted summary judgment in Pictometry's favor on non-infringement, and denied summary judgment as to invalidity. The Order also denied Geospan's summary judgment as to infringement, but granted it as to invalidity. In short, the result was that Pictometry was held to have not infringed the '946 patent as a matter of law, but the '946 patent is still valid. In reaching that result, "determining location" was construed to require the use of two images in determining location, based on the '946 patent's specification's references to a mathematical process known as triangulation. Pictometry's invalidity claims did not concern claim construction for the most part, but its enablement arguments influenced the construction of "determining location." This motion for attorney fees followed. In seeking its attorney fees, Pictometry invokes both 35 U.S.C. § 285 and 28 U.S.C. § 1297.

### III.  DISCUSSION

**A.     35 U.S.C. § 285 standard**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Section 285 requires a two-step analysis. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003). First, the court must determine whether the prevailing party has proven by clear and convincing evidence that the case is exceptional. Id. (citations omitted). Absent misconduct in securing the patent or in the litigation, a case is

exceptional if it was both (1) objectively baseless and (2) maintained in subjective bad faith.

Serio-US Indus., Inc. v. Plastic Recovery Technologies Corp., 459 F.3d 1311, 1322 (Fed. Cir.

2006).  A case is objectively baseless where "no reasonable litigant could realistically expect

success on the merits."  iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1376 (Fed. Cir. 2011)

(quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60

(1993)).  The second step is to determine if an award of attorney fees is appropriate.  Forest

Labs., 339 F.3d at 1328.  Because this case is not exceptional, the second prong is not reached

here.

### 1.      Geospan's Infringement Claims are not objectively baseless.

As a threshold matter, Pictometry is the prevailing party and may seek attorney fees if

this is an exceptional case.  Pictometry argues that this case is exceptional because the

infringement theories advanced by Geospan were objectively baseless.  Geospan advanced

infringement theories related to claim 16 and claim 1 (and its dependent claims 3, 4, and 7).

Because infringement of claim 16 was the first alleged, it will be discussed first.

### a.      Claim 16

At summary judgment, Geospan advanced two theories related to infringement.  First,

Geospan argued for a claim construction that would not have required that two images be used to

determine location of an object, but rather only that the object must appear in two images.

Second, Geospan argued that even if a contrary claim construction requiring use of two images

to determine location were adopted, that the "tie-pointing" process infringed under that

construction.  Neither argument was objectively baseless.

Geospan's argument with respect to claim construction was reasonable, although

ultimately wrong.  The terms of claim 16 to be construed were "determining location of an object shown in at least two of the recorded non-coplanar images obtained from different ones of the first, second, third, and fourth video cameras."  Ultimately, the Court determined that "determining location" meant "determining location based on the location of an object in multiple images coming from different cameras."[1]  March 31, 2011 Order [Docket No. 242] at 12.  Geospan had urged a construction that the object only be *shown* in two "non-coplanar" images.  Given that nothing in the claim language precluded Geospan's argument, it was not objectively baseless.  See iLOR, 631 F.3d at 1378 (holding that claim construction argument not precluded by claim language was proffered in good faith).  Indeed, Geospan was able to point to the "street centerline determination" from the specification to bolster its argument.  Further, even after losing its claim construction argument with respect to claim 1, Geospan was able to support its argument for construing claim 16 by invoking the doctrine of claim differentiation, which guides courts to construe different claim language differently where possible.  See Autogiro Co. of Am. v. United States, 384 F.2d 391, 404 (Ct. Cl. 1967) ("Claim differentiation is a guide, not a rigid rule.  If a claim will bear only one interpretation, similarity will have to be tolerated.").  Geospan could have reasonably expected success on the merits of its claim construction argument.

This Court rejected Geospan's claim construction argument.  Notwithstanding its

---

[1] Fulbright asserts that the Court's construction was a "*sua sponte* construction," was a "*sua sponte* narrow claim interpretation," or was "an unurged claim construction position."  Fulbright's Opp. to Pictometry's Mot. at 3, 10, 11.  While a court may adopt a construction of a claim term *sua sponte*, it did not do so here, Pictometry advocated for the construction ultimately adopted by the Court.  E.g., Pictometry Int'l Corp.'s Mem. in Opp. to Pl.'s Mot. for Summ. J. at 5-6.

continued insistence that its position was correct, Geospan cannot, and did not, patent every method of "determining location" of an object through photogrammetry that ever was or ever may come to be.  The specification informed the Court as to *how* the location of an object was determined.  The only method for determining the location of an object shown in multiple images disclosed in the specification of the '946 patent is using the location of that object in multiple images and the known information about the cameras that produced those images to triangulate its location.  See '946 patent col.15 ll.55-61 ("[M]ultiple images containing a single chosen reference point are used to triangulate the position of the point relative to the cameras taking the images.  This relative position is then used in combination with the known position of the cameras . . . to determine the absolute position of the chosen point.").  Because the Court so held, Pictometry prevailed.  However, Pictometry's mere assertion that Geospan "should have known" the Court would reach that result falls short of clear and convincing evidence that no reasonable litigant could have expected success, especially in light of the non-frivolous legal arguments Geospan asserted.

Neither was Geospan's argument that "tie-pointing" infringed Pictometry's offered claim construction objectively baseless.  In support of its infringement theory Geospan pointed to the following questioning from Schultz's deposition:

Q: And then through that [tie-pointing] process, you have now used these multiple images to identify the location of that object?

A: To identify the location of the object within that single image, yes.

Q: Based upon where it appears in these additional images?

A: Correct.

Dec. 8, 2010 Sugisaka Decl. Ex. 9 ('Schultz Dep.") 142:9-16.  Maslon contends that these statements "unequivocally admitted that Pictometry's tie-pointing process used multiple images to determine location."  Mem. of Law by Pl. and the Maslon Law Firm in Opp. to Def.'s Mot. at 13.  The merit of this argument is best left for the appellate court, which has yet to disagree with Geospan's position.  Tie-pointing requires "identifying" the location of an object within an image in order to compare that location to the location determined from another image in order to exercise quality control in search of "sorties" with systemic error.  As stated in Schultz's declaration and not rebutted by Geospan, the location of objects in each image is already determined, whether or not identified by a user, through single-ray projection prior to tie-pointing.  Nov. 12, 2009 Schultz Decl. ¶¶ 16-17.  Nonetheless, because "tie-pointing" does make use of the location of an object in multiple images, and given the complexities of photogrammetry in particular and patent litigation in general, it was not unreasonable to argue that "tie-pointing" infringed the '946 patent.  Schultz's deposition testimony was arguably vague and a reasonable litigant could have expected success on the merits by citing it.

In summary, none of the arguments proffered by Geospan to support infringement of claim 16 of the '946 patent were objectively baseless.  Therefore, this is not an exceptional case as it relates to claim 16.

### b.     Claim 1 and its dependent claims

With respect to claim 1, and its asserted dependent claims, the timing of Geospan's allegations illustrates this is not an exceptional case.  Claim 1 and its dependent claims did not form the basis of infringement theories until after Schultz's deposition, with its discussion of "tie-pointing."  The claim construction adopted for claim 1, and most obvious from its plain

language, required "determining location" of an object based upon both the object's location in multiple images and the position of the cameras producing those images.  See March 31, 2011 Order at 7.  This construction produced the consistent result, bolstered by Geospan's own expert report, that  "determining location" was achieved using the same method in both claim 1 and claim 16, notwithstanding the latter's use of "based upon."  See id. at 12.  With that construction, the difference between claim 1 and claim 16 turns on camera positioning and claim 1's requirement that images be obtained at different times compared to claim 16's requirement that images be obtained from different cameras.  See id.; see also '946 patent col.18 ll.32-55; '946 patent col.20 ll.20-51.  Therefore, for the same reasons discussed with respect to claim 16, it was not objectively baseless for Geospan to argue infringement of claim 1 under the construction proposed by Pictometry (and adopted by the Court) based on "tie-pointing."

Although not objectively baseless, the claim construction arguments advanced for claim 1 are more tenuous than the claim construction arguments for claim 16.  At summary judgment, Geospan urged a construction of claim 1 that would not require the use of two images to determine the location of an object, but merely that the object had to be shown in two images, as with claim 16.  Geospan's construction was contrary to the plain language of the claim, which clearly requires that the location of an object be determined "based upon" the object's location in multiple images.  '946 patent col.18 l.51.  Succinctly put, Geospan urged the Court to ignore the phrase "based upon," which was refused.

Geospan's position, while contradicted by the plain language of the claim, was supported by the "street center line determination."  In essence, therefore, Geospan urged an idiosyncratic definition based on the patent specification.  This is not an objectively baseless litigation tactic.

Of course, the Court chose instead to read the "street center line determination" to relate to claims of the '946 patent that were not at issue.  Patent specifications, however, typically do not expressly relate their paragraphs to particular claims, and the '946 patent specification did not do so.  Therefore, while the Court ultimately disagreed, this was not an argument that "no reasonable litigant" could expect to prevail on.

**B.**     **28 U.S.C. § 1927 Standard**

Pictometry also invokes 28 U.S.C. § 1927 in seeking its attorney fees.  Section 1927 states that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Section 1927 sanctions are proper "when an attorney's conduct viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003) (internal quotation and citation omitted).  In addition, § 1927 is construed strictly so as not to dampen the legitimate zeal of an attorney in representing a client. Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999) (citation omitted).

Pictometry identifies two sources for its § 1927 argument–the addition of infringement theories under claims 1, 3, 4 and 7, and an apparent change of course with respect to the construction of claim 1.  With respect to the addition of infringement theories, no unreasonable or vexatious conduct occurred.  The additional theories were alleged only after a foundation for the argument was developed during Schultz's deposition.  If Pictometry was unwilling to incur the costs of defending against those infringement theories, it could have opposed Geospan's Motion for Amend/Correct Plaintiff's Claim Chart [Docket No. 79] ("Motion to Amend") but

11

did not do so.  Furthermore, as discussed above, while the "tie-pointing" process was ultimately found not to infringe claims 1, 3, 4, and 7 of the '946 patent as a matter of law, there was no conduct to warrant sanctions.

Similarly, the position taken with respect to the construction of claim 1 does not warrant sanctions.  Pictometry argues that statements by Geospan in support of its Motion to Amend–that it did not have earlier evidence that Pictometry determines the location of objects using multiple images–contradicts the later argument at summary judgment, and warrants sanction.  Zealous advocacy allows attorneys to pursue alternative theories.

Further, regardless of the position of Geospan in its Motion to Amend, all parties were aware that "determining location" was a matter of dispute, as it was listed as a disputed term in the parties' Joint Claim Construction Chart [Docket No. 134, Attachment A] .  The parties chose, however, not to brief or argue that term during the claim construction phase.  Instead, that term emerged as pivotal in the arguments at summary judgment and necessitated construction then.  No further proceedings were necessary, both parties merely briefed their respective positions on the additional term.  Further, both parties refined their positions from those taken, but then abandoned, prior to the claim construction hearing.  See Joint Claim Construction Chart at 10-13.  With "determining location" being a matter of dispute from the beginning, Maslon could have taken a variety of positions on the construction of that term without multiplying the proceedings.  While the arguments with respect to the construction of "determining location" as used in claim 1 ultimately were rejected, they were not so unreasonable and vexatious as to warrant sanctions.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Motion for Attorney Fees [Docket No. 267] is **DENIED**.

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 8, 2011.

13