UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Geospan Corporation,

        Plaintiff,

  v.                              **MEMORANDUM OPINION AND ORDER**

Pictometry International Corporation,    Civil No. 08-816 ADM/JSM

        Defendant.

_____

Kurt J. Niederluecke, Esq., and Grant D. Fairbairn, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, on behalf of Plaintiff.

Joseph P. Titterington, Esq., and D. Ward Hobson, Esq., Dunlap Codding, P.C., Oklahoma City, OK, and Rachel K. Zimmerman, Esq., Merchant & Gould, P.C., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Plaintiff Geospan Corporation's ("Geospan") Motion for Relief from Judgment [Docket No. 292]. Geospan seeks relief from the Court's March 31, 2011 Judgment [Docket No. 243] ("Judgment") denying Geospan's claim that Defendant Pictometry International Corporation ("Pictometry") infringed Claim 16 of U.S. Patent No. 5,633,946 (the "'946 Patent"). The Judgment was affirmed by the Federal Circuit, and a Mandate [Docket No. 291] was issued on July 13, 2012. Geospan now requests that the March 2011 Judgment be reopened so the Court may reconsider its construction of Claim 16 in light of the *Ex Parte* Reexamination Certificate that was issued for the '946 Patent on May 29, 2012. Pictometry opposes the Motion. For the reasons set forth below, Geospan's Motion is denied.

## II.  BACKGROUND

**A.  Infringement Action**

Almost five years ago, on March 20, 2008, Geospan filed a Complaint [Docket No. 1] alleging Pictometry infringed the '946 patent owned by Geospan.[1]  The '946 Patent describes a method for collecting and processing visual and spatial position information for the purpose of forming a geographic information database.  Compl. Ex. A ('946 Patent) at [57].  The information in the database can then be used to accurately determine the spatial position of an object seen in the collected visual information.  Id.

The science of obtaining accurate information about physical objects through interpretation of photographic or visual images is known as photogrammetry.  See Sugisaka Decl. [Docket No. 195] Ex. 2, Amended Expert Report of Dr. Ronald Briggs ("Briggs Report") ¶ 7.  At the time the '946 Patent was filed in 1995, the predominate technologies used in photogrammetry for determining locations of objects were stereo systems.  Briggs Report ¶ 17.  The '946 Patent improved the field of photogrammetry by creating a method that allows the use of non-stereo cameras.  Summ. J. Order at 3.

Claim 16 of the '946 Patent relates to "a method for collection of visual and spatial position from a moving platform."  '946 Patent col.20 ll.12-13.  Claim 16 recites eight steps for collecting video images from cameras positioned on a "moving platform" and associating data with those images.  '946 Patent col.20 ll.14-51.  The eighth step of Claim 16 is "determining location of an object shown in at least two of the recorded non-coplanar images obtained from

---

[1] The facts underlying the infringement case are recited in the Court's March 31, 2011 Memorandum Opinion and Order [Docket No. 242] ("Summ. J. Order") and are incorporated by reference.  Accordingly, only an abridged version is provided here.

different ones of the first, second, third, and fourth video cameras." '946 Patent col.20 ll.48-51.

**B.      Summary Judgment Order**

On March 31, 2011, the Court granted summary judgment in favor of Pictometry on Geospan's claim that Pictometry infringed on Claims 1, 3, 4, 7, and 16 of the '946 Patent. Summ. J. Order at 5-14, 19.[2] In so ruling, the Court was required to construe the "determining location" step of Claim 16. Id. at 11-12. Geospan argued that an object's location may be determined under Claim 16 by using multiple images or by using a single image. Id. at 12. Pictometry argued an object's location may only be determined under Claim 16 by using multiple images, and not by using a single image. Id.

The Court construed the "determining location" step by analyzing the specification and prosecution history, and by reading Claim 16 in context with the other claims in the '946 Patent. Id. at 12. Claim 16 was found to require "the location of an object to be determined based upon the location of multiple images." Id. at 13. In reaching this conclusion, Geospan's argument that the "street line determination" method disclosed in the '946 Patent was a method for "determining location" in Claim 16 was rejected. The Court reasoned: "the 'street line determination' does not refer to a method for determining the location of an object using only one image but rather refers to calculating the offset of a vehicle from the center of a street as required by other claims not at issue . . . ." Id. Based on this construction, Pictometry did not infringe Claim 16 as a matter of law. Id. at 13-14. Therefore, judgment was entered in favor of Pictometry on the infringement claim. Judgment ¶ 3. Geospan appealed the ruling to the

---

[2] The Court also granted summary judgment in favor of Geospan on Pictometry's counterclaim for invalidity, and dismissed with prejudice Pictometry's counterclaim for inequitable conduct. Id. at 14-20. Those rulings are not at issue here.

Federal Circuit.  See Notice of Appeal [Docket No. 247].

**C.     Reexamination Proceeding**

At the time Judgment was entered, Claims 1, 3, 4, 7, and 16 of the '946 Patent were undergoing reexamination by the United States Patent and Trademark Office ("PTO").  The reexamination proceeding had been initiated by Pictometry, who had challenged the patentability of those claims in view of prior art references describing "non-coplanar" photogrammetry.  See Hobson Decl. [Docket No. 298] Ex. 1 (PTO Order Granting Request for *Ex Parte* Reexamination) at 2-9.

On November 2, 2011, while Geospan's appeal of this Court's Judgment was pending, the PTO issued an Office Action rejecting Claims 1, 3, 4, 7, and 16 as unpatentable over prior art.  See generally id. Ex. 4 (Nov. 2, 2011 Office Action).  Geospan responded to the rejection of Claim 16 by arguing it was patentable because, unlike the art cited by the PTO, Claim 16 described a method for determining the location of an object without the use of stereo cameras. Id. Ex. 5 (Jan. 3, 2012 Amendment) at 7.  Geospan also sought to add two new claims – Claims 19 and 20 – that were dependent on Claim 16.  Id. at 23-25.  Claim 19 described determining the location of an object using "a non-coplanar video image."  Claim 20 described determining location using "at least two . . . non-coplanar images."  Id. at 24.  Geopan contended the new claims were "patentable over the cited art for the same reasons" that Claim 16 was patentable, and stated that the new claims "recite additional limitations . . . not disclosed, taught or suggested by the cited art."  Id. at 23.

As support for Claim 19, Geospan cited to column 10, line 37 through column 11, line 25 and Fig. 8 of the '946 Patent specification.  Id.  These citations refer to the "street centerline

determination" method in the '946 Patent.  The Court had analyzed the same provisions nine months earlier and had concluded  "the 'street line determination' does not refer to a method for determining the location of an object using only one image."  Summ. J. Order at 13.

On February 1, 2012, the PTO issued a Final Office Action determining Claim 19 to be patentable, but rejecting Claim 20 and maintaining the rejection of Claim 16.  Hobson Decl. Ex. 6 (Feb. 1, 2012 Final Office Action) at 30-36.[3]  Claim 16 continued to be rejected because it did not recite the limitation of determining location without using stereo cameras.  Id. at 40-42.

In March, 2012, the PTO and Geospan participated in two telephonic interviews to discuss the issue of whether Claim 16 disavowed the use of stereophotogrammetry to determine the location of an object.  Id. Ex. 9 (March 30, 3012 Amendment) at 9-11.  Geospan described the interview discussions as "extremely helpful in focusing on the standard used by the [PTO] in claim interpretation during reexamination . . . and in the choice of language for amendments to claims 1 and 16."  Id. at 11.  Thereafter, Geospan sought to amend Claim 16 to recite that the "determining location step" is performed "without use of stereophotogrammetry."  Id. at 6.

On April 12, 2012, after briefs had been filed but before oral argument had been heard by the Federal Circuit, the PTO issued a Notice of Intent to Reissue an *Ex Parte* Reexamination Certificate in the reexamination proceeding.  See Fairbarn Decl. Ex. C ("Reissue Notice") at 3.  The Reissue Notice stated, *inter alia*, that the PTO would be issuing a Reexamination Certificate allowing an amendment to Claim 16 to provide that the location of an object is "determined without the use of stereo photogrammetry."  Id. at 4.  The Reissue Notice also recited the text of

---

[3] The page number citations for Exhibit 6 of the Hobson Declaration are to the numbered pages of the February 1, 2012 Final Office Action.

Claim 19, and stated Claim 19 was patentable because it incorporated the subject matter of claim 16 by reference, and because "[n]one of the applied references or those cited in the order granting reexamination teaches determining location of an object" using the method described in Claim 19. Id. at 5-6.

Geospan moved to include the Reissue Notice in the record on appeal, arguing the reexamination "sheds light on the PTO's view of a central issue in these appeals – the proper construction of Claim 16." Id. Ex. 11 (Geospan's April 19, 2012 Mot.). Geospan argued Claim 19 supports the position that Claim 16 covers the use of a single image to determine location. Id. The Federal Circuit denied Geospan's motion on May 3, 2012 and heard oral argument in the appeal on May 7, 2012. See id. Ex. 13 (May 3, 2012 Order Denying Mot.).

On May 29, 2012, while the appeal remained under advisement with the Federal Circuit, the PTO issued an *Ex Parte* Reexamination Certificate for the '946 Patent incorporating the changes described in the Reissue Notice. See generally First Fairbairn Decl. Ex. I (Reexamination Certificate). The Reexamination Certificate reads in pertinent part:

> 16. A method for collection of visual and spatial position information from a moving platform, the method comprising . . . determining location of an object shown in at least two of the recorded non-coplanar video images obtained from different ones of the first, second, third, and fourth video cameras, *wherein location of the object is determined without use of stereo photogrammetry.*
> . . .
>
> *19. The method of claim 16, wherein determining location of the object includes using a camera coordinate system that has an origin at a camera lens of one of the first, second, third, and fourth video cameras; selecting a pixel representing the object in a noncoplanar video image produced by that video camera; generating a vector that extends from the origin through the pixel; and converting the vector to global spatial coordinates based upon the instantaneous spatial position and orientation of that video camera*

6

>*associated with that non-coplanar video image.*
>
>*20. The method of claim 16, wherein determining location of the object includes performing a photogrammetric process using the [sic] at least two of the recorded non-coplanar images.*

Id. col.2 ll.21-25, col.4 ll.4-18 (emphasis in original to show additions to patent).

### D.     Federal Circuit Affirmance and Mandate

On June 5, 2012, a three-judge panel of the Federal Circuit issued a per curiam affirmance [Docket No. 291] of this Court's Judgment. A Mandate issued on July 13, 2012 establishing the Federal Circuit's Order as the law of the case. Id.

### E.     Geospan's Request for Rule 60(b)(6) Relief

Geospan now moves under Federal Rule of Civil Procedure 60(b)(6) for relief from this Court's Judgment of non-infringement. Geospan argues exceptional circumstances exist for reopening the case because "no tribunal has yet determined how the PTO's allowance of new claim 19 affects the construction of the 'determining location' step in claim 16." Geospan's Mem. in Supp. of Mot. for Relief from J. [Docket No. 293] ("Pl.'s Mem.") at 7. Geospan contends the addition of Claim 19 shows the PTO construed Claim 16 as covering both the use of a single image and of multiple images to determine location, whereas the Court's construction requires the use of at least two images. Id. at 4. As such, argues Geospan, the PTO examiners' construction of Claim 16 irreconcilably conflicts with this Court's construction and would change the outcome of the infringement claim. Id. at 4, 7-8. Geospan further argues that if the infringement case is not reopened, Geospan will be precluded from asserting Claim 19 against Pictometry in this lawsuit and from bringing future actions based on Claim 19 against future infringers. Pl.'s Mem. at 9-10.

7

Pictometry opposes the Motion, arguing Geospan has not shown the existence of exceptional circumstances warranting relief under Rule 60(b)(6).  Def.'s Resp. in Opp'n. [Docket No. 296] at 13-14.  Pictometry contends the PTO did not construe Claim 16 to include determining location using a single image, and that Geospan's interpretation of amended Claim 16 would render it invalid because the scope of a patent claim may not be enlarged in a reexamination proceeding.  Id. at 14-21.  Pictometry also argues that this Court's construction of Claim 16 and resulting determination that Pictometry did not infringe were affirmed by the Federal Circuit and now stand as the law of the case.  Id. at 9-13.

### III.  DISCUSSION

**A.     Rule 60(b)(6)**

"Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." Atkinson v. Prudential Prop. Co., 43 F.3d 367, 371 (8th Cir. 1994) (internal quotations omitted).[4]  Under the "catch-all" provision of Rule 60(b)(6), a court may relieve a party from final judgment when a movant shows any reason that justifies relief "other than the more specific circumstances set out in Rules 60(b)(1)-(5)." Gonzalez v. Crosby, 545 U.S. 524, 529 (2005).[5]  "Relief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress."  Harley

---

[4] A motion under Federal Rule of Civil Procedure 60(b)(6) "is not a procedural issue unique to patent law," and thus the law of the regional circuit applies.  Louisville Bedding Co. v. Pillowtex Corp., 455 F.3d 1377, 1379 (Fed. Cir. 2006).

[5] Geospan concedes that "this motion does not implicate any of the specific grounds identified in Rule 60(b)(1)-(5)."  Id. at 6.

8

v. Zoesch, 413 F.3d 866, 871 (8th Cir. 2005).

Applying the Rule 60(b)(6) standard here, Geospan was clearly not denied the opportunity to fully litigate its claim that the scope of Claim 16 includes determining the location of an object using a single image. To the contrary, the scope of Claim 16 has been extensively briefed, orally argued, and thoroughly litigated both in this Court and the Federal Circuit. As Geospan concedes, "Geospan's position throughout this lawsuit and the reexamination has **always** been that claim 16 covers the use of a single image to determine location." Geospan's Reply Mem. [Docket No. 299] ("Pl.'s Reply Mem.") at 12 (emphasis in original). Thus, while the PTO's allowance of Claim 19 may be consistent with "the scope Geospan has argued for all along," id., this scope was fully considered and rejected by this Court and by a three-judge panel of the Federal Circuit. Because Geospan has had a full and fair opportunity to litigate and seek redress for its assertion that Claim 16 includes determining the location of an object using a single image, the extraordinary relief standard set by Rule 60(b)(6) is not met.

Moreover, to the extent that the PTO, by allowing Claim 19, may have interpreted Claim 16 broadly to include determining location using a single image, the PTO's and Court's differing constructions do not constitute an exceptional circumstance. Rather, the arguably different constructions can be explained by the broader claim construction standard and different focus of the PTO in the reexamination proceeding, as compared with the Court's construction standard and focus in the infringement litigation.

The PTO "is required to use a different standard for construing claims than that used by district courts." In re Am. Acad. of Sci. Tech. Ctr., 367 F.3d 1359, 1369 (Fed. Cir. 2004). During initial patent examinations as well as in reexaminations, the PTO must give claims their

broadest reasonable construction consistent with the specifications. Id. at 1364. In contrast, in an infringement action, a district court seeks to apply the "proper" construction; that is, the court "construes the patent claims in a manner that 'most naturally aligns with the patent's description of the invention.'" Alien Tech. Corp. v. Intermec, Inc., Civil No. 3:06-cv-51, 2010 WL 5174482, at *4 (D.N.D. Dec. 15, 2010) (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005)). In determining the proper construction of a claim, a court considers the specification, prosecution history, prior art, and other claims. Id. Therefore, the PTO's arguably broader construction of Claim 16 is consistent with its application of the broadest reasonable construction standard during reexamination, as compared with the Court's application of the proper construction in the infringement litigation. See TDM Am., LLC v. United States, 100 Fed. Cl. 485, 492 (2011) (denying motion under Federal Rule of Civil Procedure 60(b)(2), in part because inconsistencies between PTO's and Court's claim constructions "could well be explained by the differing claim construction standards that apply at the PTO"); Alien Tech., 2010 WL 5174482, at *4 (refusing to reconsider court's claim construction that was arguably inconsistent with PTO's construction, in part because courts apply a different claim construction standard than that used by the PTO).

The PTO's allowance of Claim 19 may also be explained by the different focus of the reexamination proceeding as compared with the infringement litigation. The primary focus of the reexamination proceeding, as evidenced by the PTO's February 1, 2012 Final Office Action and its March 2012 interviews with Geospan, was whether Claim16 adequately disavowed the use of stereophotogrammetry in determining location, not whether Claim 16 was broad enough to determine location using a single image. Indeed, the reexamination history does not indicate

whether the PTO, when determining Claim 19 to be patentable, specifically considered and rejected this Court's construction of the scope of Claim 16.[6] The PTO's stated reasons for allowing Claim 19 were simply that Claim 19 incorporated the subject matter of Claim 16 by reference, and that the cited art references did not teach determining the location of an object using the method described in Claim 19. In contrast, the focus of the infringement litigation was whether the scope of Claim 16 included determining location using a single image, and the Court had the benefit of extensive briefing, argument, and the full participation of both parties to the litigation when considering this precise issue.

Thus, the PTO's allowance of Claim 19 is not an exceptional circumstance warranting Rule 60(b)(6) relief.

**B.     Law of the Case**

Not only are exceptional circumstances lacking for Rule 60(b)(6) relief, the law of the case doctrine advises against reopening this case. "In order to serve the interests of judicial economy, finality, and avoidance of 'panel shopping,' the [law of the case] doctrine strongly discourages reconsideration of issues that a previous panel has addressed, fully considered, and decided." Hughes Aircraft Co. v. United States, 86 F.3d 1566, 1578 (Fed. Cir. 1996) (Bryson, J., concurring), vacated on other grounds, 520 U.S. 1183 (1997). Adherence to the law of the case doctrine is "especially important" in patent cases, "as there are more opportunities for a party

---

[6] The record does show that Geospan provided the PTO with an Information Disclosure Statement that included the Summary Judgment Order and a letter from Pictometry's counsel arguing Claim 19 was unpatentable. See Fairbairn Decl. Exs. N (Pictometry Letter), O (Information Disclosure Statement). However, the PTO explicitly stated that it had considered "the references submitted in the Information Disclosure Statement . . . only to the extent that the content and relevance of the references ha[d] been explained." Reissue Notice at 2. There is no record of the extent, if any, to which Geospan had explained the relevance of the disclosed items.

dissatisfied with a ruling from one panel to seek a different result from a second." Id.

Departures from the law of the case are rare, and generally require "the discovery of new and material evidence not presented in the prior action or 'an intervening change of controlling legal authority, or [a showing that] the prior decision is clearly incorrect and its preservation would work a manifest injustice.'" Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1336 (Fed. Cir. 2004) (quoting Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001)).

None of the reasons for departing from the law of the case exist here. First, Geospan expressly concedes this Motion is not implicated by Federal Rule of Civil Procedure 60(b)(2), which provides for relief from a judgment due to "newly discovered evidence." Additionally, the PTO's construction of Claim 16 in the reexamination proceedings does not constitute an intervening change of controlling legal authority. Rather, a patent's prosecution history is only one of multiple sources a court may use for guidance when determining the meaning of a claim. Phillips, 415 F.3d at 1317.

Lastly, Geospan has not shown that the Court's construction is clearly incorrect. "Clear error leading to manifest injustice is judged under a 'stringent standard': 'A mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point.'" Toro Co., 383 F.3d at 1336-37 (quoting Gindes v. United States, 740 F.2d 947, 950 (Fed. Cir. 1984)). Rather, a court must be "convinced to a certainty" that an error was committed. Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 901 (Fed. Cir. 1984). Nothing in the reexamination history, including the PTO's allowance of Claim 19, leads to the conclusion that this Court's construction of Claim 16 was clearly erroneous. As discussed above, the allowance of Claim 19 is explained by the PTO's broader claim construction standard and different focus in

the *ex parte* reexamination proceeding. Additionally – and more significantly – a three-judge panel of the Federal Circuit necessarily conducted a *de novo* review[7] of the scope of Claim 16 and affirmed this Court's construction. Thus, the Court is not convinced to a certainty that an error has been committed. Accordingly, a departure from the law of the case is not warranted.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Geospan's Motion for Relief from Judgment [Docket No. 292] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 28, 2012

---

[7] Claim construction is a question of law which the Federal Circuit reviews *de novo*. Cybor Corp. v. FAS Techs., Inc., 138 F.2d 1448, 1456 (Fed. Cir. 1998).